# THE SVEA ASSURANCE COMPANY OF GOTHENBURG, SWEDEN, *vs.* ELDRIDGE PACKHAM, JR., ET·AL.

*Fire Insurance—Subrogation of Insurer to Right of Action of Assured Against Wrong-doer Causing Loss—Settlement Made With Wrong-doer by Assured—Repudiation by Insurer of Assured's Right to Sue Wrong-doer—Right of Assured to Retain Sum Paid by Wrong-doer for Loss of Profits not Covered by Insurance—Allowance of Counsel Fees.*

When property covered by various policies of fire insurance has been destroyed by a fire caused by a third party's fault, so that the insurers have the right under their policies after payment of the loss to be subrogated to the insured's right of action against the wrong-doer, and all of them except one recognize the right of the insured to represent them in a suit against the wrong-doer and acquiesce in a certain settlement of the claim made in good faith, then the insurer who so repudiated the right of the insured to bring the suit against the wrong-doer is not entitled to demand from the insured more than its proportion of the sum paid by the wrong-doer for loss on the property insured in pursuance of the settlement so made, although an additional sum was also paid for another loss caused by the same wrong and not covered by the insurance.

Defendant's stock of merchandise, which was covered by nine policies of insurance, was destroyed by a fire caused by the negligence of a gas company. Under an adjustment the insurers paid to the defendant about $17,000, receiving receipts referring to a clause in the policies which provided that the insurers should be·subrogated to the extent of their payments to the right of recovery of the insured against the party causing the loss. Defendant had previously instituted a suit against the gas company in which all of the insurers except the plaintiff co-operated. Plaintiff when requested so to do had refused, and brought an action itself against the gas company which was dismissed, when it was ascertained that the only action which could be brought against the tort-feasor must be by the insured. At the request of the insurers, other than the plaintiff, defendant settled his suit against the gas company by agreeing to accept a judgment which appropriated $9,000 for loss on his merchandise and $9,000 for loss of profits in the business—the latter item not being covered by the policies. Defendant had previously agreed to pay counsel who conducted the litigation thirty per cent of the amount recovered as a contingent fee. Since the insurers were entitled to be subrogated to defendant's right of action against the gas company, de-

fendant proposed to distribute among them, *pro rata*, the $9,000 so re-covered by him for loss on merchandise less expenses of the suit.   The share of the plaintiff company under this distribution was about $800, but plaintiff claimed that it was entitled to receive the amount it had paid to defendant being over $2,000, and filed the bill in this case to en-force said claim, denying the right of defendant to compromise his ac-tion against the gas company and alleging that the insurers were entitled to be subrogated to the whole amount paid by the gas company. *Held*,

1st. That the agreement under which the loss on the merchandise in the suit against the gas company was estimated at $9,000 and judgment entered accordingly, although this amount was less than that which de-fendant had received from the insurers, having been made in good faith and with the assent of all the insurers, other than the plaintiff, was a valid compromise and under the circumstances of this case was not in violation of plaintiffs' rights under the subrogation clause of the policy.

2nd. That the defendant was entitled to retain from the amount paid by the gas company the costs and the reasonable expenses of the suit, and the insurers, including the plaintiff, knew what contract had been made for counsel fees and did not object to the same when the loss was ad-justed under the policies.

3rd. That in defendant's suit against the gas company he was making a *bona fide* and valid claim for loss of profits as well as of merchandise, caused by that company's default, and the agreement by which $9,000 was awarded as damages for loss of profits having been made with the assent of the insurers, other than plaintiff, the defendant is entitled to retain that sum, since the plaintiff's right of subrogation related only to defendant's right of action for loss on the merchandise insured.

4th. That plaintiff is entitled to receive only its proportion of the $9,000 paid by the gas company for loss on merchandise, less defendant's costs and expenses of the suit.

Appeal from a decree of Circuit Court No. 2, of Baltimore City (SHARP, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Archibald H. Taylor* and *E. P. Keech, Jr.*, (with whom was *John P. Bruns* on the brief), for the appellant :

On the payment of the loss the underwriter is subrogated to all the rights of recovery of the insured of every nature what-soever, including the total *spes recuperandi* and the rights to earnings, freights and profits, and the right of action against

the trespasser, by whose wrongful act the loss was caused. *Kennedy* v. *Ins. Co.*, 3 H. & J., 367; *Houstman* v. *Thornton*, 1 Holt, N. P. 242; *Davy* v. *Hallett*, 3 Caines, 16; *Mumford* v. *Hallett*, 1 Johns (N. Y.) 433; *Phillipps on Ins.*, sections 1503, 1657, 1740 and 1741; *Liverpool Co.* v. *Phœnix Co.*, 129 U. S. 397; *Phœnix Ins. Co.* v. *Erie Co.*, 117 U. S. 312.

When the assured brings his suit against the wrong-doer, *he recovers "in his own personal right."* As our Court has also said, the cause of action is one and indivisible, and it cannot be argued that he recovers in his personal right, as to part of the recovery, and "as an incident to property" in the thing insured, as another part of the recovery, and that the insurer has only an assignment upon the latter part of the recovery. His contract in the policy was to give the insurer an assignment of all his right of recovery; and, as the Supreme Court has said before, it is all personal, and if he can exclude any part of it from the effect of the assignment, on the ground that it is personal to himself, and not included in the property insured, he can exclude all of it. Our Court has already reached the right result in *Packham's case* referred to, namely, that he cannot exclude the insurer from any portion of the right of recovery without releasing the insurer from all liability to pay to him the insurance money. *Packham* v. *German F. Ins. Co.*, 91 Md. 515; *Cartairs* v. *Ins. Co.*, 18 Fed. Rep. 473; *Dick* v. *Franklin Ins. Co.*, 10 Mo. App. 376, affirmed, 81 Mo. 183; *Niagara F. Ins. Co.* v. *Fidelity Co.*, 123 Pa. St. 516.

Of course, if the insurer has already paid him the insurance money, and he releases or diminishes in the manner above set forth the insurer's right of recovery over, the consideration on which the insurance money was paid has failed, and the insurer is entitled to recover from the insured the whole insurance money, and the insured will not be heard to say that he has received for the underwriter a part only of the recovery had by virtue of this personal right. *West of Eng. Co.* v. *Isaacs*, L. R., 2 Q. B. D. (1896) 377, affirmed, L. R. 1. Q. B. D. (1897) 226.

Packham himself was in no doubt whatever that the con-

tract contained in the policy, and which he had executed by signing the subrogation receipt, gave the appellant a lien on any recovery that might be had, to the full extent of its payment, because, as before quoted, at the time the settlement between him and the gas company was proposed, he says he was first opposed to accepting $18,000, because "$18,000, according to the way I was thinking at that time, would be only enough to repay the insurance companies." If this was his contract, as he says he understood it, what a mockery of justice it would be to suppose that he could change its effect by making an entry upon the records of the case in which the appellant had no right to interfere and in charging fees and expenses, so as to reduce the amount of its recovery to one-third of that which he had contracted to give it? *Stoughton* v. *Gas Co.*, 165 Pa. St. 428.

The liability of the insured as *dominus litis* is to account for, and pay to the insurer, all moneys that he may recover in a suit against the wrong-doer or to pay the full amount of insurance money which he has received from the insurer, if he shall release the wrong-doer in whole or in part, and thus take away or diminish the right of recovery, which he had, on payment assigned to the insurer.

Whether we regard the compromise verdict for $18,000 as a fund even more than sufficient to repay to the insurance companies all that they had paid Packham, out of which he must make restitution to them, or as an agreement for the release of the obligation of the gas company by the terms of which the rights of the appellant were not reserved equally in either case, Packham is bound to account to the appellant for the full amount of money paid him by it under the policy, the payment having been made under a legal obligation and not being voluntary. In the present case, the insured, standing in the position of trustee, justifies his act of releasing, as he calls it, one-half the claim which he had undertaken, and was bound to prosecute faithfully for the benefit of the appellant, by saying that he did so in order to recover one-half of a peculiarly private claim of his own, of which he is able to give no proof whatever except his statement.

The appellee says that his motive for giving up one-half the sum of money, the whole of which was due the appellant, in anything were at all due, was to get one-half of a purely chimerical claim of his own, which, he had in fact also assigned the appellant. Certainly, where any one in the position of a trustee, receives a sum of money for himself as consideration for abandoning the rights of his *cestui que trust,* a Court of equity will treat that money as received for the *cestui que trust* to the full amount of the same ; or as an alternative, which the *Packham case* clearly sets out, the Court would require such trustee to return to the assured the amount of money which he had obtained from the insurer, upon terms of faithfully prosecuting this right, and should treat him as trustee, of the money he thus obtained from the insurer, in case it was shown that he had released the insurer's right, in whole or in part. If he has released or destroyed the insurer's claim altogether, he must account to the insurer for the whole of the insurance money which has been paid him. If the insured has released the insurer's claim and right to a portion, he must restore to the insurer the portion, so released, lost or destroyed, until the whole of the insurer's claim which is the whole of the insurance money paid him in a case like this, is returned to the insurer. Certainly it would be a lame and ridiculous conclusion, to say, after the decision in the *Packham case*, that the Court there meant to make it possible for the insured to release any portion of the subrogatory claim of the insurer without accounting to him for the amount thus released, so long as he did not release or lose for him the whole of the subrogatory claim.

We have shown, first, that Packham has utterly failed to prove in this case, that he suffered any loss of profits whatever, and that his claim on this account is fanciful and speculative in the remotest degree ; and second, that whatever his right of recovery might have been, the whole of it, for whatever account, or whether for goods and profits, was assigned to the appellant on payment of the loss. In fact, under the true interpretation of the appellant's rights and their effect, the

attempted apportionment of the compromise verdict can make no difference to it; for, whether Packham had the right to apportion the recovery or not, under the very terms of the apportionment itself, the recovery on both alleged grounds had already become vested in the appellant by virtue of its right of subrogation and belonged to it under the terms of the subrogation assignment.

*George Whitelock* for Packham, appellee:

If it be contended by the appellant that, although it sought by the suit against the gas company, and it here essays, to recover to the extent only of the loss paid by the appellant, it was nevertheless " subrogated," for the purpose of such recovery to Packham's whole cause of action, it is respectfully submitted, that such contention rests upon a construction of the subrogation receipt inconsistent with the terms of the policy, unwarranted by the language of a single decision, and, in its far-reaching consequences, subversive of the ordinary common law remedies of the insured for the security of non-insurable personal and property rights.

It is alleged that the appellees, by agreement, put " feigned interrogatories " to the jury. The interrogatories were propounded under the Act of 1894, chapter 185, and were, therefore, as provided by that Act, upon "particular questions of fact material to the issue on trial;" and, as the Act further provided, the Court, at the request of Packham, required the jury to answer the interrogatories as appears by the docket entries exhibited with the bill.

It is true that the bill avers that the verdict and judgment were entered by an attempted agreement between the appellees; but it is not alleged that the result thus reached under the very eye and with the necessary concurrence of the Court, was contrary to, or without legal evidence, or that there was irregularity, or that the alleged agreement was not *bona fide*, or that Packham could have recovered more, or that there was want of diligence on his part, or that the appellant had no knowledge of, or was denied the opportunity of participating

in that suit.   In *Monmouth Insurance Company* v. *Hutchinson, &c.*, 21 N. J. Eq. 115, where the insured collected $1,800 of a $4,000 loss from the insurer and subsequently received $2,000 from the tort-feasor and then released it from all further liability, a bill against the insured and the wrong-doer was retained because there were elements of fraud.   *M'Laren's case*, 12 Ont. 692.   In the New Jersey case the insurer was absolutely excluded, just as in the German Fire Insurance Company case it was excluded under the verdict here assailed.   Here the bill and its exhibits show that the verdict, in fact, included more of the appellant's, than of Packham's claim.

The naked theory of the bill, which is without any aid from the evidence, comes down to this, that while Packham was entitled to bring action he was not entitled to compromise it, even *bona fide*.   "I can find no ground for such a suggestion," said the Master of the Rolls, in *Commercial Union Assurance Company* v. *Lister*, L. R. 9 Ch. 483, where application was made by insurers of part of a loss, for an order restraining the insured from compromising an action against the wrong-doer.   The bill was retained in order that what was *bona fide* "with respect of a matter in which he is personally and very largely interested" might be thereafter determined.   See also *Dunham* v. *N. E. Mut. Ins. Co.*, 1 Low; D. 253-4-7; *Joyce, Insurance*, sec. 3574.

When the averments of the bill are read in the light of the evidence subsequently taken, it becomes more manifest that the appellant's real attitude in this controversy is that of an arbitrary claimant, which seeks to impose upon Packham all of the liabilities of an insurer of the results of a law suit toward a maintenance of which it did not contribute a single dollar by way of costs or expenses, which it refused to participate in, upon the ground that its losses could not be recovered in that proceeding, and to which with full knowledge it paid absolutely no attention whatever during its progress.

The case at bar, both as to the facts and as to the principles involved, falls directly within the doctrines applied in *Newcomb* v. *The Cinn. Ins. Co.*, 22 Ohio State, 382; *Com. Assur.*

*Co.* v. *Lister*, L. R. 9 Ch. 483, and in *National Fire Ins. Co.* v. *M'Laren*, 12 Ont. 682.

*Robert Ludlow Preston* (with whom were *William A. Fisher* and *J. Alex. Preston* on the brief), for the Consol. Gas Co., appellee.

BOYD, J., delivered the opinion of the Court :

Eldridge Packham, Jr., who traded as E. Packham, Jr., & Co., had his stock of goods and merchandise insured in nine companies for the sum of $22,500, which included a policy issued by the appellant for three thousand dollars. While the policies were in force a fire occurred and Mr. Packham furnished proofs of loss to the companies, amounting in the aggregate to $18,660, but the appraisers, appointed under the provisions of the policies, only allowed $17,360, which he received, less certain discounts. It was claimed that the fire, which occurred on December 22nd, 1898, was the result of the negligence of the Consolidated Gas Company of Baltimore City, and, on February 1st, 1899, before the insurance money was paid, Mr. Packham instituted a suit against that company claiming $50,000 for the destruction of the stock in trade and other losses which we will have occasion to refer to. That suit resulted in a verdict for the plaintiff for $18,000, the amount having been agreed upon after the trial commenced. Interrogatories were submitted to the jury to ascertain the loss on the stock of merchandise and the loss to the profits in plaintiff's business and each was answered by fixing the amount at nine thousand dollars. Judgment was entered on the 28th day of November, 1899, for the $18,000 and on the 1st day of December it was paid to the plaintiff and the judgment was entered satisfied. On the next day Mr. Packham prepared a statement, showing his calculation of the distribution of the nine thousand dollars, less expenses and costs, to the insurance companies, which was sent to their representatives, with the request that they examine it and advise him whether they found it correct. Six of the companies accepted

the amounts thus distributed to them, and since the bill was filed one of the original complainants in this cause, the Palatine Insurance Company, Limited, of Manchester, England, accepted that distributed to it and the bill was dismissed as to that company. The Svea Assurance Company by that distribution would only receive $805.37, whilst it claims $2,317.27, being the amount it paid Packham. This bill was filed by those two companies against Eldridge Packham, Jr., and the Consolidated Gas Company of Baltimore City to prohibit the latter from paying and the former from receiving the amount of the judgment, to require the gas company to bring it into Court for distribution and to have the Court take jurisdiction over the fund. The theory upon which the bill seeks relief is that the complainant and the other companies were entitled to be subrogated to the rights of Packham to the fund recovered from the gas company, to the extent of the amounts paid by them respectively, and the appellant denies his right to compromise the claim against the gas company, to retain one-half of the amount received and to allow counsel thirty per cent of the amount recovered.

1. The policy of the appellant contains the following clause : " If this company shall claim that the fire was caused by the act or neglect of any person or corporation, private or municipal, this company shall, on payment of the loss, be subrogated to the extent of such payment to all right of recovery by the insured for the loss resulting therefrom, and such right shall be assigned to this company by the insured on receiving such payment." When the money was paid to Packham by the appellant, what is called a " subrogation receipt " was signed by him which, in effect, followed the provision of the policy. In the recent case of *Packham* v. *German Fire Insurance Company*, 91 Md. 515, an insurer's right of subrogation was considered and fully recognized. That case arose out of the same transactions that are now before us. Packham sued that company to recover the amount alleged to be due on a policy on office furniture and fixtures which were destroyed by this fire. The question was presented there by a demurrer

to a plea of the defendant, setting up the suit against the gas company and the verdict entered by agreement, as a bar to the action.   The recovery against the gas company, by the direction of Packham, did not include any compensation for loss incurred under that policy, and there was no reservation of any right for the protection of that company.   It was held that the plaintiff could not recover, as there could be no further recovery against the gas company and the plaintiff had destroyed the defendant's right of subrogation under the policy. The general principle was thus stated, " Contracts of marine and fire insurance are essentially contracts of indemnity, and, if the insured recovers the amount of his loss from any source, the insurer may recover from him *pro tanto*, and this right is called the subrogation of the insurer into the rights of the insured."   It is therefore useless to cite other authorities to sustain that doctrine which has been generally adopted by the Courts in this country and England.   This case presents some facts, however, which distinguish it from the one above referred to in some important particulars.

2. It will be remembered that the suit brought by Mr. Packham against the gas company was instituted in February, 1899, whilst the insurance companies did not settle the losses until several months afterwards.   Messrs. Whitelock and Colton represented him under an agreement by which they received $250 as a retainer, and were to receive thirty per cent of the amount recovered from the gas company.   When the insurance companies settled Mr. Whitelock communicated with the representatives of several of them, including Mr. McCaffrey, who represented the appellant, and stated to them he thought it desirable that all of the companies should cooperate with Mr. Packham and take such part as they deemed compatible with their interests, so far as it could be done without conflict with Mr. Packham's rights.   Mr. Keech was subsequently employed by the appellant, and Mr. Whitelock told him that he had reached the conclusion that there could only be one recovery against the gas company, and that in the name of Mr. Packham, and as he, Mr. Keech, represented

two of the companies, he and Mr. Colton had determined to offer him a *pro rata* part of the fee for which they had arranged with Mr. Packham, if he would go into the case and assist at the trial. Shortly afterwards Mr. Keech wrote to Mr. White-lock and, after stating that he had been looking into the authorities, said : " I have come to the clear conclusion not only that I cannot agree with the position you take, that one suit is all that can be brought, but I believe that the only way in which the rights of my clients can be adequately protected is by instituting several suits. This I shall do today. I will be very glad, however, to give you and Mr. Colton any aid in my power in the prosecution of your case, so as to develop the whole situation to the greatest advantage of all of us. You must not hesitate to call on me if I can be of service to you." That was dated October 19th, 1899, and the same day he did bring the two suits against the gas company for his clients. Those cases remained on the docket until January, when the gas company filed a petition in this case requiring those two companies to elect between the suits at law and this bill, and they elected to try this cause and the actions at law were dismissed on the 30th day of January, 1900. Mr. Whitelock testified that he did not communicate further with the complainant as he regarded Mr. Keech's action as a refusal to unite with them in the prosecution of the suit against the gas company. In that he was evidently correct, for, although Mr. Keech did offer to give him and Mr. Colton any aid he could, he refused to go into the case brought by them and said he had reached the conclusion that the only way his clients could be adequately protected was by separate suits by them, which he at once instituted. After the judgment was obtained he ascertained, on further investigation of the subject, that he was mistaken in his original position and then for the first time made claim to any part of the amount to be recovered in the name of Packham for the benefit of his clients. He was probably misled by the decisions in jurisdictions where statutes or the rules of practice authorize such suits, and the case of *Packham* v. *German Fire Ins. Company*, definitely settling the question in this State, had not then been decided.

The suit of Packham against the gas company came up for trial on November 27th, 1899. During the first day of the trial Judge Fisher, of counsel for defendant, suggested the possibility of reaching an agreement as to the amount of a verdict. After Court an arrangement was made for a conference that night. Mr. Whitelock communicated with the representatives of other companies, but did not send word to Mr. McCaffrey because, to use his language, "I interpreted Mr. Keech's letter of the 19th of October as a positive refusal to look to our case as a means of indemnification to his company." After a number of interviews that night, the gas company finally agreed to a verdict of $18,000. Mr. Packham "refused absolutely at first to take it" and it was only when those representatives of the insurance companies who were present assented to a division of the fund in to two equal parts that he consented to it. The testimony shows that those present not only consented to it but deemed it a good settlement. The next day a verdict was rendered for $18,000, and the interrogatories were answered as above stated.

There is nothing in the record to suggest, much less prove, that it was not a wise settlement, nor is there anything from which we can infer any intention of defrauding or prejudicing the insurance companies. All of them had an opportunity to be represented in the litigation, those of them who took part in it were satisfied that the settlement should be made and the others refused the offer of Mr. Packham, made through his attorneys, to unite with him. It is true that the attorneys for the appellant and the Palatine company were not notified of the trial or the proposed settlement, but they had not only declined to unite with Mr. Packham, but were still proceeding with their separate actions against the gas company. It was not a compromise of a claim for which the damages had been ascertained, but it would necessarily have depended upon the jury to determine what amount, if any, would be allowed. The gas company was not bound by the estimate placed on the stock of goods by the appraisers, as it was not a party to the contract of insurance. The uncontradicted evidence on that

subject is that the insurance companies only offered Mr. Packham about thirty-three and a third per cent of his claim. If they were acting in good faith when they made that offer, surely they could not have. complained if the jury had only allowed that much. They had paid more, but that was because they were required to do so by reason of the fact that the appraisers allowed it, but if the jury had adopted their view of the amount of loss, as indicated by their offer, it would have awarded them much less than the nine thousand dollars, which was obtained through this verdict. When, then, the representatives of the companies that did take part in the suit, instituted by Mr. Packham, urged it and this appellant had refused to recognize Mr. Packham's right to sue for *it*, and there is nothing to show that it was not a desirable settlement to make, why should he be prohibited from making a compromise? It may be conceded that the insured cannot fritter away the rights of an insurer entitled to be subrogated, and·that he cannot ordinarily make a compromise without being responsible to the insurer for the amount paid by him, but under such circumstances as we have stated there can, in our opinion, be no question about his right to thus settle a suit for unliquidated damages, when the majority of those interested not only approved it but urged it. We are now speaking of the right of the insured to compromise the suit, and not his right to retain part of the amount received, which we will consider later. In the case of *Packham* v. *German Fire Insurance Company*, *supra*, it was decided that only one suit could be brought, and that in the name of the insured, but neither that case nor any of those there relied on go to the extent of holding the insured responsible to an insurer who thus places the burden on the insured, and not only does not ask to use his name in the effort to recover but refuses to do so, if the insured makes a compromise *in good faith*, with the approval of the insurers who did take part and who represented the greater portion of the claims in controversy. Under such circumstances the insured would be justified in making what we have called "a compromise" but what was in reality simply a settlement of

unliquidated damages for a sum that may be as much as the jury would have allowed, if there had been no agreement as to the amount of the verdict.

3. Having determined that the insured can make a settlement for less than he recovered of the insurance companies, under such facts as are before us, it remains to be determined whether Mr. Packham can retain any portion of this verdict until he has fully satisfied the insurers. There can be no doubt about his right to retain out of the fund his costs and reasonable expenses incurred in the litigation. It would, indeed, be a harsh rule if he must be required to incur costs and expenses in the recovery of money for the benefit of insurers, without reimbursing himself out of the fund so recovered. There is no evidence to show that the amount he agreed to allow the attorneys was unreasonable or excessive. Cases of that character are generally defended by all the means the law affords. They often result in several trials and usually the receipt of the compensation is greatly delayed, when taken on a contingency. If the case is setttled before it has taken its usual course, the attorney is undoubtedly benefited thereby, but the client is saved the necessity, and oftentimes hardship, of paying out cash and has no personal liability for fees in the event of failure. Under such circumstances he must expect to, and usually does, give larger compensation, if successful, than he would if he agreed to pay a fixed fee, whether successful or not. When Mr. Packham made the arrangement for fees the insurers had not paid the insurance money and when they did they knew what he had agreed to allow. Mr. Whitelock told Mr. Keech of the arrangement and the letter from Mr. Little, the representative of one of the companies, which was sent to Mr. Keech's client and filed with his testimony, shows that it was understood by the companies. Yet they stood by without objecting to it and permitted the attorneys thus employed by Mr. Packham to proceed, knowing the terms of their employment. The case of *Davis et al.* v. *Gemmell et al.* 73 Md. 530, is a conclusive answer to such objection by them now. There the attor-

neys were employed upon a contingent fee by Mr. Brydon, who had sued in his own name and recovered a judgment which was determined to belong to the North Branch Coal Company. Some of the stockholders objected to the allowance of the fee, but this Court said they "stood by and saw the work done—they neither interfered nor objected—and they cannot now be heard in a Court of equity to except to that work being paid for out of the fund realized by the labor of these gentlemen, especially when they themselves, these exceptants, are seeking to reap the benefit of that very work and labor." In *Newcomb* v. *Cincinnati Insurance Company*, 22 Ohio St. 382' after fully recognizing the right of the insurer to be subrogated to a claim against the wrong-doer, the Court said : "But the assured will not, in the forum of conscience, be required to account for more than the surplus, which may remain in his hands, after satisfying his own excess of loss in full, and his reasonable expenses incurred in its recovery ; unless the underwriter shall, on notice and opportunity given, have contributed to, and made common cause with him, in the prosecution." Without citing other authorities on that subject, we are of the opinion that it would be inequitable to deprive the attorneys of the fees agreed to be allowed or to hold the insured responsible for them and the costs incurred in the prosecution of the case.

We will now consider the right of Mr. Packham to retain the remainder of the nine thousand dollars, in excees of fees and expenses. In the first place it may be well to ascertain the effect of the subrogation receipt, which, as we have said, in substance follows the provision in the policy and need not be quoted. Broad as its language is, it cannot be construed to apply to any claims or demands beyond those made by reason of the loss or injury to the *property insured*. If, for example, Mr. Packham had owned the house in which the merchandise was stored, and the negligence of the gas company had caused both to be destroyed, it was evidently not the intention of the parties to assign any claim he might have had for the loss of the house. When the loss occurs through the tort of

a wrong-doer, the insurer is entitled to be subrogated to the claim of the insured for the loss of the *insured property, not of other property*. The money paid by appellant was for loss and damage "to the property insured by" its policy, and the assignment had reference to that and not to any other property, such for example as the office furniture, etc., insured by the German Fire Insurance Company, and the subject of dispute in the Packham case above referred to, or to loss of profits in the assured's business.

There can be no doubt from the evidence that Packham, by his suit against the gas company, was seeking to recover for losses other than the merchandise destroyed or injured. The declaration alleges that "as the direct consequence of such negligence and want of care of the defendant  *  *  *  * the business of the plaintiff was arrested and interfered with," etc., that "the plaintiff has been compelled to pay out and must continue to pay out large sums of money for the rent and use of said building until the same may be repaired as speedily as may be" and other matters. But whether the allegations were technically sufficient to enable him to recover for loss of profits to his business is not necessary to be determined in this case. The testimony abundantly shows that such was being attempted when the case was settled, and, if the defendant had raised any question as to his right to do so under the pleadings, the declaration could have been amended, if necessary. It is well settled in this State that in actions of tort the loss of profits in a trade or business may be recovered, if it be the direct result of the defendant's wrongful act and is proven with sufficient certainty. *Brown* v. *Werner*, 40 Md. 15; *Shafer* v. *Wilson*, 44 Md. 268; *Lawson* v. *Price*, 45 Md. 138; *Evans* v. *Murphy*, 87 Md. 498. Mr. Packham testified that the damage done his business by the fire, up to the time of trial, approximated eighteen to twenty thousand dollars ; he said he had fifty-one persons on his pay-roll and "had lots of salaries of people in my employ to carry over," had the rent of two warehouses for several months and other things he mentioned. Undoubtedly there were some things he named

as elements of damages that could not have been recovered, but there is enough in the testimony to show that he was making a *bona fide* claim for damages, some of which were recoverable if sufficiently proven, in addition to those for the loss of the merchandise. If the minimum loss of business which he testified to be divided in half it amounts to nine thousand dollars. There is nothing in the record which would justify us in reaching a conclusion that he was simply endeavoring to retain this portion of the verdict by setting up a defense which had no merit in it and no foundation to base it upon. On the contrary it is manifest that he was making a *bona fide* effort to recover damages for the merchandise, which he knew would go to the insurance companies, to the extent of their loss, and also for other losses which he had sustained. While engaged in that effort the offer of settlement was made and he only consented to accept it when urged by the representatives of the companies present, and upon the express understanding that the verdict should be divided.

The interrogatories which the jury answered, having been submitted in pursuance of the agreement made, do not add any special strength to his position, excepting in so far as they caused to be made a matter of record that it was intended to settle the claim in which the insurance companies were interested for nine thousand dollars, and that the balance was for the plaintiff's own compensation for other losses he had sustained. If the case had gone to the jury without any understanding between the parties as to the amount of the verdict, we can see no reason why interrogatories of this character could not have been properly submitted. The insured could not have brought several actions, but was compelled to recover for all his losses sustained by that fire in one suit. Therefore when he was claiming damages for losses other than those which the insurance companies were entitled to, it would have been proper, if under the rulings of the Court he might recover other damages, to have the jury determine the amounts allowed on the respective claims. This case differs materially from that of *Dorsey* v. *Habersack*, 84 Md. 128, as there the

plaintiff was entitled to all the damages recovered, and it was sought to require the jury to determine " the *amount* of injury occasioned by *some* of a number of acts done by the defendant." As we there said " In many cases it might be impossible for them to determine definitely what proportion of an alleged injury was sustained by one of several acts." But in the suit against the gas company the jury, in making up their verdict, would have properly ascertained what loss was sustained by the injury to the merchandise, which was for the benefit of the insurers, and what on account of the loss to the plaintiff, exclusive of that.

The case then is practically as if the insured had accepted nine thousand dollars for loss of the insured property and had thereby released the wrong-doer as to the balance. From what we have already said it can be seen that we are of the opinion that he could, under the peculiar circumstances of this case, do so without being held liable to the appellant for more than its proportion of the amount recovered, after deducting costs and expenses incurred by him. It would be very inequitable to permit one of eight or nine insurers to stand off and refuse to take part in a suit brought by the insured and let him, at the instance and with the consent of the others, settle for an agreed amount and then come into a Court of equity and exact payment in full of him, when the others only get a part. The other companies did perform their duty towards the insured and they, representing a majority of the claims, not only induced him to accept what they doubtless thought was for their benefit, but by means of that inducement possibly caused him to accept less for his individual claims than he might have received, especially if out of the $6,300, the net amount he received, he must be required to pay the appellant and any other company that occupies a similar position their claims in full. So, without in any way questioning the general principle of subrogation as announced in *Packham* v. *German Fire Ins. Co.* and cases there cited, as well as many other similar authorities, we cannot apply it in a case such as this where the insurer repudiated the right of the insured to represent it in the suit

against the wrong-doer before judgment, and now (after the insured has in good faith made a settlement in accordance with the wishes and request of those who did co-operate with him) seeks to profit by its refusal to take part in that proceeding, on the theory that it was not a party to the settlement and hence is not bound by it. We might cite such cases as *Newcomb* v. *The Cincinnati Ins. Co.; supra; Com. Assurance Company* v. *Lister*, L. R. 9 Ch. Ap. 483, and *National Fire Insurance Company* v. *McLaren*, 12 Ont. 682, as well as others, in support of our position, but it seems to us that the peculiar facts in this case sufficiently take it out of the general rule, that a release of the wrong-doer by an insured makes him liable to the insurer for the amount paid, to avoid the necessity of quoting from authorities.

4. The Court below was clearly right in dismissing the bill against the gas company. The amount of the verdict had been paid by it to the insured before the bill was filed. There is no evidence of fraud on the part of the gas company in connection with the verdict, and what we have already said about the right of the insured to make the settlement is sufficient to relieve the gas company. In the absence of collusion or fraud on the part of that company, payment by it to Mr. Packham, discharged it from any further liability on account of the fire. The decree of the Court below must be affirmed.

> *Decree affirmed, appellant to pay the costs above and below.*