ÆTNA INS. CO. v. UNITED FRUIT CO.

UNION MARINE & GENERAL INS. CO., Limited, v. SAME.

BOSTON INS. CO. v. SAME.

District Court, S. D. New York.
Dec. 11, 1936.

442

Bigham, Englar, Jones & Houston, of New York City (D. Roger Englar, and Martin Detels, both of New York City, of counsel), for plaintiffs.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Cletus Keating and Richard Sullivan, both of New York City, of counsel), for defendant.

PATTERSON, District Judge.

The three actions were tried together. There was an agreed statement of facts, with trial before a jury of one and counter motions for directed verdict.

The plaintiffs were hull insurers of the defendant's steamship Almirante. The policies were valued policies, it being agreed in them that the vessel had a value of $632,610. Other policies of similar tenor were issued by other insurance companies, and the aggregate amount of insurance (including an amount carried by the defendant as self-insurer) was $632,610. On September 6, 1918, the Almirante came into collision with the steamship Hisko and became a total loss. A few months later the plaintiffs and other insurers paid to the defendant the full amounts covered by the policies.

The insurers and the defendant jointly retained counsel to push a claim against the United States as owner of the Hisko. Congress passed a special act allowing suit against the United States for the loss of the Almirante, but barring recovery of interest. In the suit then brought the defendant recovered $1,761,693.02 as the actual value of the Almirante and received payment of that amount from the United States on July 26, 1932. The legal expenses incurred in the litigation came to $300,024.53, and it is conceded that such expenses were fair and reasonable. They were paid out of the fund, and the net recovery was thus reduced to $1,461,668.49. Out of this balance the defendant remitted to the plaintiffs and other hull insurers, in September and November, 1932, the amounts of their payments under the policies, less part of the expenses. The part of the expenses charged against the insurers was smaller, in proportion to their interests, than the part charged against the defendant. As a result of this treatment of the fund recovered, the plaintiffs and other insurers in like position received back about 89 per cent. of what they had originally paid to the defendant under the policies.

The plaintiffs make alternate claims in their pleadings. The broader claim is that the hull insurers as a group are entitled to the entire net recovery, $1,461,668.49, and that the plaintiffs should have their proportionate shares of that amount, less what they have already received. This claim is not pressed in this court, in view of what was decided in The Livingstone, 130 F. 746 (C.C.A.2). The narrower claim is for the full amount of their payments to the defendant under the policies in 1918, without deduction of any kind, and for interest

on those payments from 1918, less of course the amounts received in 1932. All American underwriters are making similar claims; the English underwriters are making no claims.

There are further facts relative to policies of additional insurance on the Almirante and to subrogation receipts sent out by the defendant to two of the plaintiffs. They are without significance in the present controversy and will be passed.

■ A marine policy of insurance being a contract of indemnity, the insurer on payment is subrogated to the rights of the insured against persons who caused the loss. Phoenix Ins. Co. v. Erie Transportation Co., 117 U.S. 312, 6 S.Ct. 750, 29 L.Ed. 873; Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U.S. 397, 462, 9 S.Ct. 469, 32 L.Ed. 788. The subrogation is total where the insured's loss has been made good in full by the insurer. It is partial where only a part of the loss has been paid by the insurer. In the latter case the insurer is entitled to whatever is left after the insured has been made whole for his loss and for his expenses in recovering from those responsible for the loss. Shawnee Fire Ins. Co. v. Cosgrove, 86 Kan. 374, 121 P. 488; Svea Assur. Co. v. Packham, 92 Md. 464, 48 A. 359, 52 L.R.A. 95; Newcomb v. Cincinnati Ins. Co., 22 Ohio St. 382, 10 Am.Rep. 746. By the rule of subrogation, insured and insurer are ultimately placed in the same position that they would have occupied if the insured had first recovered from the persons at fault and had thereafter brought suit to compel the insurer to honor the policy; in such a case the insurer, if liable at all, is liable only for the balance necessary to afford complete reimbursement to the insured. See Ætna Casualty Co. v. Phoenix Co., 285 U.S. 209, 214, 52 S.Ct. 329, 331, 76 L.Ed. 709.

■■ These broad rules govern the relative rights of insured and insurer under a valued policy of hull insurance, with the qualification that in the case of a valued policy the value of the hull is to be taken at the figure set in the policy rather than at actual value. In a valued policy the parties have made an agreement on the value of the property covered, in effect stipulating what the damages are to be in the event of total loss. Except for cases of fraudulent overvaluation, the agreed valuation is conclusive on both in respect to rights and duties arising from the policy. Marine Ins. Co. v. Hodgson, 6 Cranch, 206, 3 L.Ed. 200;

The Potomac, 105 U.S. 630, 635, 26 L.Ed. 1194; International Navigation Co. v. Atlantic Mutual Ins. Co., 100 F. 304 (D.C.N. Y.); Providence & Stonington S. S. Co. v. Phoenix Ins. Co., 89 N.Y. 559, 564, 565. In suit on the policy the insured may not prove a higher actual value; the insurer may not prove a lower. It follows that if the owner of a vessel has already collected damages from one responsible for the loss and later takes action against an insurer which has insured the hull under a valued policy, the owner may hold the insurer for no more than the excess of the agreed value over the net amount already in hand. His suit is for the agreed value, but he must credit the insurer with the net proceeds of his collection from the party who caused the loss. See Arnold on Marine Insurance, § 1229. Goole & Hull Steam Towing Co. v. Ocean Marine Ins. Co. (1928) 1 K.B. 589, is an instance. The insured vessel was damaged in collision to the extent of £5,000. The owner recovered £2,500 from the other vessel, and then brought suit on a hull policy wherein an agreed value of £4,000 was placed on the vessel. The owner conceived that he should recover £2,500, the difference between actual loss and the collection from the other vessel. It was held, however, that the insurer was liable only for £1,500, the difference between agreed valuation and the collection from the other vessel. The case was decided on general principles of marine insurance, not on any provisions in the Marine Insurance Act. So in the present case if the sequence of events had been that the owner of the Almirante first collected a net sum of $1,461,668.49 from the United States for loss of the vessel and then brought suit against hull insurers on policies in which the agreed value of the vessel was $632,610, no recovery against the insurers would stand.

■ By like reasoning it has become the accepted rule that where the hull insurer has first paid the value agreed on in the policy and the owner later recovers a sum from a third person whose negligence caused or contributed to the loss, the insurer may recoup the net sum so recovered, up to the full amount of the payment under the policy. The rule applies whether the net sum recovered from the third person is smaller or greater than the sum received from the insurer on agreed valuation. If the net sum recovered from the offender is less than the amount already paid by the

insurer as agreed value, the insurer will be beneficially entitled to the entire net sum recovered, to the exclusion of the insured. The St. Johns, 101 F. 469 (D.C.N.Y.); Federal Ins. Co. v. Detroit Fire & Marine Ins. Co., 202 F. 648, 651 (C.C.A.6); North of England Ins. Ass'n. v. Armstrong, L.R. 5 Q.B. 244; Thames & Mersey Marine Ins. Co. v. British & Chilean S. S. Co. (1915) 2 K.B. 214, affirmed (1916) 1 K.B. 30; Egan v. British & Foreign Marine Ins. Co., 193 Ill. 295, 61 N.E. 1081, 86 Am.St. Rep. 342. See, also, Arnould on Marine Insurance, §§ 1229, 1230. If the insured by his suit against the person responsible for his loss collects a net fund greater than the amount which the insurer has already paid as agreed value, the insured is bound to turn over to the insurer a sum equal to the amount paid by the insurer, without deduction of anything for expenses, and may keep only what is left. That was the precise situation in The Livingstone, 130 F. 746 (C.C.A.2). There the insurer had paid to the owner of a vessel totally lost the sum of $25,000, the value agreed on in the policy. The owner later recovered from the vessel at fault $37,500 as the actual value of the vessel. The District Court decided that the insurer was entitled to the whole fund. The Circuit Court of Appeals held, however, that the insurer was entitled only to $25,000, the amount which it had paid out. The record in the Livingstone Case shows that on appeal the insured sought to have the insurer charged with part of the expenses of the suit, but the decision was that the insurer should have the $25,000 without deduction—full reimbursement but no profit. "We conclude, therefore, that the insurance companies, having paid the full amount stipulated in the policies, are entitled to recoup that sum and that neither the abandonment nor the subrogation permits them to appropriate the balance recovered from the wrongdoer." Page 749.

The defendant urges that the decision in The Livingstone was due to the peculiar circumstances present in that case. The fact is, however, that the Livingstone decision rested on broad grounds; the result could not have been different without departure from settled rules relative to valued policies of hull insurance.

In the present case the defendant finally recovered from the owner of the vessel at fault in the collision a sum far beyond the amount which it had received from the insurers as the full value of the vessel agreed on in the policies. After payment of all expenses incurred in recovery, the defendant still had a fund more than double the agreed value. It was accordingly bound to pay over to the insurers amounts equal to those which it had received from them as payments under the valued policies, and there was no warrant for charging any part of the legal expenses against the insurers. In other words, the defendant should have paid to Ætna Insurance Company $18,978 instead of $16,845.24, to Boston Insurance Company $15,815 instead of $14,037.71, and to Union Marine & General Insurance Company $6,326 instead of $5,615.08.

The defendant protests that this result will violate the rule that the insured is to be completely reimbursed before the insurer takes anything by subrogation. But in cases of total loss under a hull policy the insured is rarely reimbursed for his actual loss where the policy is a valued one, and the reason is that he has made an agreement on value with his insurers. This protest, as well as the argument that the insured should be treated as constructive co-insurer for the excess of actual value over agreed value, is answered by Judge Addison Brown in The St. Johns, supra.

There remains the plaintiffs' demand for interest. They claim that under subrogation they ought to have interest on their payments from 1918 on, pointing out that in The Livingstone, supra, the insurer was allowed interest from the time of its payment under the policy. In the Livingstone Case the insured had recovered interest as part of the relief given against the offending vessel; consequently the insurer was held entitled to interest by subrogation. Here the defendant took nothing by way of interest. It got no redress as to that element of its loss. As to interest it held nothing as trustee for the plaintiffs, and their right of subrogation gives them nothing. See Standard Marine Ins. Co. v. Scottish Metropolitan Assur. Co., 283 U.S. 284, 288, 51 S.Ct. 371, 372, 75 L.Ed. 1037. The interest allowed will be only on the unpaid balances from 1932 on. That much the plaintiffs ought to have, for the defendant should have reimbursed them in full at that time and has since had the use of their money.

There will be a verdict directed for the plaintiffs. Ætna Insurance Company will

have a verdict for $2,132.76, Boston Insurance Company for $1,777.29, Union Marine & General Insurance Company for $710.92; each figure to carry interest from November 28, 1932.