# LENNIE P. MACKALL *v.* ZAYRE CORPORATION

[No. 15, September Term, 1981.]

*Decided March 29, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*David S. Greene,* with whom were *Shapiro, Meiselman & Greene, Chartered* on the brief, for appellant.

*Theodore B. Oshrine,* with whom were *Donald C. Allen* and *Allen, Thieblot & Alexander* on the brief, for appellee.

DAVIDSON, J., delivered the opinion of the Court.

This case presents two questions. The first question is whether the principles of res judicata and collateral estoppel prevent a company from litigating, in a tort action, its status as an employer of an individual after there has been a determination in a Workmen's Compensation Commission proceeding that the individual is the employee of another company. The second question is whether, given the evidence in this case, the trial court erred in instructing the jury that an individual simultaneously might be the employee of two employers.

Zayre Corporation (Zayre) is a company which owns and operates a chain of retail department stores, one of which is located in Capitol Heights, Prince George's County. Alden Millinery (Alden) was a Boston-based company which leased space from Zayre for the sale of wigs and millinery at Zayre's Capitol Heights store. The appellant, Lennie P. Mackall

(Mackall), was the manager of the Alden concession in the Zayre Capitol Heights store.

On 15 December 1975, while at work, Mackall slipped and fell on a liquid on the floor of an aisle and sustained permanent injuries to her back. At the time of the accident, she was in the Zayre Capitol Heights store but not within the area leased by Alden.

On 15 January 1976, Mackall filed a claim for workmen's compensation. "Alden Millinery, c/o Zayre Hampton Mall" was named as the employer, and Employers Fire Insurance Company (Employers Fire) was named as the employer's insurer.[1]

At hearings held before the Workmen's Compensation Commission (Commission), Mackall testified that she was employed by Alden, not Zayre. In August 1977 and October 1978, the Commission entered orders requiring Alden, the named employer, and Employers Fire, the insurer, to pay Mackall compensation initially for temporary total disability and ultimately for permanent partial disability.

On 20 October 1978, in the Circuit Court for Prince George's County, Mackall filed a tort action against Zayre alleging that on 15 December 1975 she had been an invitee on Zayre's premises, that she had slipped and fallen on a liquid on the floor of an aisle, and that she had sustained injuries and suffered damages as a result of Zayre's negligence. Zayre, represented by the same law firm that had represented the named employer and insurer in the Commission proceeding, filed a general issue plea and a special plea stating that Zayre was immune from suit under Maryland Code (1957, 1979 Repl.Vol.), Art. 101, § 15.[2]

---

1. Employers Fire was Zayre's compensation carrier. However, Alden reimbursed Zayre for expenses incurred for coverage. All notices of proceedings were sent to "Alden Millinery, c/o Zayre."

2. Art. 101, § 15 provides in pertinent part:

"Every employer ... shall pay ... compensation ... for the disability ... of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment without regard to fault as a cause of such injury. ... *The liability* prescribed by the last preceding paragraph *shall be exclusive. ...*" (Emphasis added.)

On 24 August 1979, Zayre filed a motion for summary judgment on the ground that at the time of the accident, Mackall was an employee of Zayre's or an employee of both Alden's and Zayre's, that she had received workmen's compensation benefits, that under Art. 101, § 15 that remedy was exclusive, and that, therefore, she could not bring a common law action for negligence against Zayre. In opposition to the motion for summary judgment, Mackall denied that at the time of the accident she was Zayre's employee. On 6 August 1979, the motion for summary judgment was denied.

On 10 March 1980, Zayre, pursuant to Maryland Rule 501 a,[3] filed a motion for a separate trial on the issue of Mackall's employment status to be held before a trial on the issues of negligence and damages. That motion was granted.

At the bifurcated trial, there was much evidence to show the circumstances under which Mackall was selected and hired. On 6 January 1972, Mackall, using a Zayre employment application, applied for the position of salesclerk at the Zayre Capitol Heights store. In June 1972, an Alden supervisor stationed in Boston, who checked Alden concessions located throughout the Washington, D.C. area approximately five times a year, determined that the Alden concession in the Zayre Capitol Heights store was not properly staffed. The Alden supervisor asked the Zayre store manager for the employment applications that were then on file with the store. After selecting Mackall's application, the Alden supervisor interviewed her. Although the Alden supervisor had authority to hire Mackall, it was his operating procedure to allow the Zayre manager to make the final decision. The Alden supervisor recommended to the Zayre manager that Mackall be hired. Mackall was subsequently hired as the manager of Alden's concession.

There was also much evidence to show the circumstances surrounding the payment of Mackall's wages. The pay scale

---

3. Md. Rule 501 a provides in pertinent part:

"The court in furtherance of convenience or to avoid prejudice may order a separate trial ... of any separate issue. ..."

applied to Mackall was the same as the pay scale applied to Zayre employees. Her entitlement to pay increases was determined by the Zayre manager on the basis of his performance evaluations. In addition, Mackall received the same fringe benefits enjoyed by Zayre employees, including health insurance, life insurance, sick pay, holiday pay, and vacation benefits, although Alden reimbursed Zayre for these expenses. Mackall, like all other Zayre employees, punched a Zayre time clock. Although she submitted weekly time sheets to Alden, Mackall's hours and wages were tallied and computed by Zayre personnel. Moreover, Mackall was paid with a Zayre check, although Zayre was reimbursed by Alden for this expense.

Additionally, there was some evidence concerning Alden's and Zayre's authority to discharge Mackall. While both Alden and Zayre had the authority independently to terminate the employment of individuals staffing the Alden concession, ordinarily the Zayre manager would notify an Alden representative before taking such action.

At the trial, there was much evidence presented concerning Alden's and Zayre's power to control and direct Mackall's conduct in the performance of her work. Alden determined the type and amount of merchandise to be sold at the Alden concession. Merchandise shipped by Alden was received by Mackall. Alden sent Mackall instructions concerning the handling and pricing of its merchandise. Alden trained Mackall to keep books and records, and Mackall was required to send daily sales reports and stock inventories as well as weekly payroll reports to Alden.

Nonetheless, Mackall was also subject to all of the rules and regulations applicable to Zayre employees. She wore a Zayre smock and was required to eat in the Zayre lounge. Although the Alden supervisor was her "supervisor," she was also supervised by the Zayre manager. The Zayre manager exercised control over the staffing of the Alden concession and was authorized to transfer a Zayre employee into the Alden concession when the concession was not adequately staffed. In addition, the Zayre manager was

authorized to assign Mackall to the Zayre jewelry department during lunchtime when that department was unattended. Moreover, the Zayre manager exercised supervision and control over the display of Alden's merchandise, as well as over the cleanliness of the Alden concession and of the store aisles within the concession.

Additionally, there was evidence presented to show the interrelationship between the sale of wigs and millinery and the regular business of Alden and Zayre. Alden's regular business was to provide wigs and millinery to be sold at retail, while Zayre's regular business was to sell various items at retail. Although Alden provided all of the wigs and millinery sold in the Alden concession, it was impossible for a customer to distinguish the Alden concession from any other Zayre department. The Alden concession had the same operating hours as the Zayre store. The sign identifying the Alden concession was furnished by Zayre. The text of the sign was limited to the words "Wigs & Millinery Dept.," and contained no reference to Alden. The tags on the Alden merchandise were Zayre tags that stated "Zayre Dept. 87."

At the close of all of the evidence, the trial court instructed the jury that an individual simultaneously might be the employee of two employers and submitted to the jury the questions whether Mackall was solely the employee of Alden, solely the employee of Zayre, or the employee of both. The jury determined that Mackall was the employee of both Alden and Zayre. On 16 September 1980, judgment was entered in favor of Zayre.

On 10 October 1980, Mackall appealed to the Court of Special Appeals. We issued a writ of certiorari before consideration by that Court. We shall affirm the judgment of the trial court.

I

Mackall contends that Zayre had notice of and was a party to the workmen's compensation proceeding. She points out that Employers Fire was the workmen's compensation insurer of both Alden and Zayre and that the law firm that

represented Employers Fire and Alden in the workmen's compensation proceeding represented Zayre in the subsequent tort action. In essence, she asserts that Zayre was a party or in privity with a party to the workmen's compensation proceeding and could have raised the question of its employment status in those proceedings. She concludes that the principles of res judicata and/or collateral estoppel prevented Zayre from litigating its status as Mackall's employer after it had been determined in a Workmen's Compensation Commission proceeding that Mackall was Alden's employee.

Even if we assume, without deciding, that under the circumstances here, res judicata or collateral estoppel principles are applicable to an administrative agency such as the Workmen's Compensation Commission, and that Zayre was a party or in privity with a party to the workmen's compensation proceeding, we would conclude that Zayre was not prevented by the principles of res judicata or collateral estoppel from litigating its status as Mackall's employer in the subsequent tort action. This Court has repeatedly recognized that there is a distinction between the principles of res judicata and collateral estoppel. *Bankers & Shippers Ins. Co. of New York v. Electro Enterprises, Inc.,* 287 Md. 641, 652, 415 A.2d 278, 284 (1980); *Cook v. State,* 281 Md. 665, 668-69, 381 A.2d 671, 673 (1978); *LeBrun v. Marcey,* 199 Md. 223, 226-27, 86 A.2d 512, 514 (1952). This distinction was recently expressed in *MPC, Inc. v. Kenny,* 279 Md. 29, 32, 367 A.2d 486, 489 (1977), (quoting *Sterling v. Local 438,* 207 Md. 132, 140-41, 113 A.2d 389, 393, *cert. denied,* 350 U.S. 875, 76 S.Ct. 119 (1955)):

" '. . . If the second suit is between the same parties and is upon the *same cause of action,* a judgment in the earlier case on the merits is an absolute bar, not only as to all matters which *were litigated* in the earlier case, but as to *all matters which could have been litigated* [res judicata]. If, in a second suit between the same parties, even though the *cause of action is different,* any determination of fact, which

was *actually litigated* in the first case, is conclusive in the second case [collateral estoppel].' " (Citation omitted) (emphasis added).

Thus, if a proceeding between parties involves the same cause of action as a previous proceeding between the same parties, the principle of res judicata applies and all matters actually litigated or that could have been litigated are conclusive in the subsequent proceeding. *Alvey v. Alvey,* 225 Md. 386, 390, 171 A.2d 92, 94 (1961); *Snodgrass v. Stubbs,* 192 Md. 287, 290-91, 64 A.2d 130, 132 (1949); *State v. Brown,* 64 Md. 199, 204, 1 A. 54, 56 (1885). If a proceeding between parties does not involve the same cause of action as a previous proceeding between the same parties, the principle of collateral estoppel applies, and only those facts or issues actually litigated in the previous action are conclusive in the subsequent proceeding. *Bankers & Shippers Ins. Co. of New York,* 287 Md. at 652, 415 A.2d at 284; *MCP, Inc.,* 279 Md. at 33, 367 A.2d at 489; *Prescott v. Coppage,* 266 Md. 562, 570-73, 296 A.2d 150, 154-55 (1972). When the principle of collateral estoppel applies, facts or issues decided in the previous action are conclusive only if identical to facts or issues presented in the subsequent proceeding. *MPC, Inc.,* 279 Md. at 35, 367 A.2d at 490; *see Washington Suburban Sanitary Comm'n v. TKU Assocs.,* 281 Md. 1, 18-19, 376 A.2d 505, 514 (1977).

Applying these principles to the instant case produces a clear result. Here the initial proceeding involved a statutory administrative action for workmen's compensation, whereas the subsequent proceeding involved a common law tort action. Manifestly, the two cases involve different causes of action. The principle of res judicata is inapplicable and the principle of collateral estoppel applies. Only those facts or issues actually litigated in the workmen's compensation proceeding are conclusive in the subsequent tort action.

The relevant issue actually litigated in the workmen's compensation proceeding was Alden's status as an employer and the fact determined there was that Alden was Mackall's employer. Zayre's status as Mackall's employer was not in

issue and, therefore, was not determined in the workmen's compensation proceeding. The issue presented in the subsequent tort action was Zayre's status as Mackall's employer, and the fact to be determined there was whether Zayre, as well as Alden, was her employer. Accordingly, under the applicable principle of collateral estoppel, Zayre was not prevented, in the subsequent tort action, from litigating its status as Mackall's employer.

## II

Mackall contends that the trial court erred in instructing the jury that an individual simultaneously may be the employee of two employers. She asserts that all of the evidence adduced at trial showed that Mackall had only a single employer, either Alden or Zayre, and that there was no evidence presented to support an inference that both Zayre and Alden were Mackall's employers. We do not agree.

This Court has repeatedly recognized that, under certain circumstances, a person performing a given function simultaneously may be the employee of two employers. *Keitz v. National Paving & Contracting Co.,* 214 Md. 479, 491, 134 A.2d 296, 301 (1957); *Baur v. Calic,* 166 Md. 387, 398-401, 171 A. 713, 717-19 (1934); *see Greer Lines Co. v. Roberts,* 216 Md. 69, 80-81, 139 A.2d 235, 240-41 (1958). Courts in other jurisdictions have reached the same conclusion. *E.g., Nash v. Sears, Roebuck & Co.,* 383 Mich. 136, 143, 174 N.W.2d 818, 820 (1970); *Antonini v. Hanna Indus.,* 94 Nev. 13, 17, 573 P.2d 1184, 1187 (1978); *DeNoyer v. Cavanaugh,* 221 N.Y. 273, 275, 116 N.E. 992, 992 (1917); *Janikowski v. Yardley's of London, Inc.,* 11 A.D.2d 577, 577, 201 N.Y.S.2d 157, 159 (1960).

In *Janikowski,* the facts were strikingly similar to those in the instant case. There, Margaret Janikowski was hired by a department store, Abraham and Straus (A & S), as a salesclerk to sell Yardley's of London, Inc. (Yardley's) products at a counter in the A & S store. She was subject to all of the rules relating to employees of A & S, and A & S

could discharge her. However, unlike other A & S sales personnel, Janikowski could not be shifted from counter to counter. She was instructed by Yardley's as to the nature and price of its various products and devoted full time to selling Yardley's products exclusively. Her salary was paid by A & S, but A & S was fully reimbursed by Yardley's.

After sustaining accidental injuries in the A & S store, Janikowski filed a claim for workmen's compensation against Yardley's and A & S, each of which were named as her employer. The Workmen's Compensation Board held that each company was Janikowski's employer and each was equally liable for her disability compensation. In affirming that decision, the New York Supreme Court, Appellate Division, recognized the same principle articulated under different circumstances by this Court, namely that a person performing a given function simultaneously may be the employee of two employers.

This Court has frequently reiterated that the question whether an employer-employee relationship exists is one for the jury to determine. In determining whether the employer-employee relationship exists, this Court has established at least five criteria. These include (1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer. The decisive test in determining whether the relation of employer and employee exists is whether the employer has the right to control and direct the employee in the performance of the work and in the manner in which the work is to be done. If there is evidence to support an inference that more than one individual or company controls or directs a person in the performance of a given function, the question whether an employer-employee relationship exists is a question of fact to be determined by the jury. *Greer Lines Co.,* 216 Md. at 79-81, 139 A.2d at 240-41; *Keitz,* 214 Md. at 491-93, 134 A.2d at 301-02; *Sacker v. Waddell,* 98 Md. 43, 53, 56 A. 399, 401 (1903).

Applying these principles to the instant case produces a clear result. Here there was evidence to show that both Alden and Zayre participated in the selection and hiring of Mackall. Both participated in the payment of her wages. Both had the power to discharge her. The retail sale of wigs and millinery was a part of the regular business of both. Most important, there was evidence to show that both exercised control over Mackall in the performance of her duties.

The evidence was more than sufficient to support an inference that both Alden and Zayre simultaneously were Mackall's employers. Thus, the question whether the employer-employee relationship existed was a question of fact to be determined by the jury. The trial court did not err in instructing the jury that Mackall simultaneously might be the employee of both Alden and Zayre. Accordingly, we shall affirm.

> *Judgment of the Circuit Court for Prince George's County affirmed.*
> *Costs to be paid by appellant.*