488 A.2d 988

**OHIO CASUALTY INSURANCE COMPANY**

v.

**Bobby T. LEE.**

**No. 735, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

March 8, 1985.

Douglas W. Biser, Towson (John E. Mudd and Mudd, Harrison & Burch, Towson, on the brief), for appellant.

Michael F. Flynn, Jr., Rockville (Geoffrey S. Gavett and Gleason & Flynn, Chartered, Rockville, on the brief), for appellee.

Argued before GARRITY, GETTY and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

This is an appeal from a judgment declaring the rights of the appellee, Lee, under the terms of an insurance policy issued to Auto Clean, Inc., a company of which Lee, during the relevant time period, was the president and major stockholder. Having determined the provisions of the policy to be ambiguous, the Circuit Court for Montgomery County issued an order declaring that appellant, Ohio Casualty, was obligated to provide a defense for Lee, as a

third-party defendant, in an action for personal injuries brought by an employee of Auto Clean, Inc., that Lee should be permitted to choose his own counsel in that case, and that Ohio Casualty was responsible for all reasonable counsel fees incurred in the defense of the third-party action and the prosecution of this declaratory judgment action. Ohio Casualty poses two questions for our resolution:

1. Was Bobby T. Lee an employee of Auto Clean, Inc. and therefore excluded as an insured under the "cross-employee" clause contained in the insurance policy issued by the appellant?

2. Did the trial court err in construing the "cross-employee" exclusion of the insurance policy issued to Auto Clean, Inc.?

The facts underlying this controversy are largely not in dispute. In 1979, Lee caused a pressurized tank[1] to be installed on the premises of Auto Clean, Inc. The contract for the purchase of the tank and its installation was with L.F. Easterday, Inc. On May 25, 1980, an employee of Auto Clean, while engaged in his employment, was injured when the pressurized tank exploded. That employee, Gregory S. Popores, filed a personal injury suit against, among others,[2] L.F. Easterday, Inc., the Noland Company, Auto Clean, Inc., and Bobby T. Lee, individually. Easterday and Noland filed third-party claims against Auto Clean and Lee, alleging that they negligently bypassed the safety controls built into the system.

In 1979, as in 1980, Lee was the president of Auto Clean, one of six directors,[3] and, with his wife, the owner of seventy-five percent of its stock. The board of directors

---

**1.** This tank was a part of an underground well system installed as a part of the car wash system utilized by Auto Clean.

**2.** The other defendants in the suit are not parties to this appeal.

**3.** On May 12, 1980, the stockholders voted to reduce the number of directors to three.

and stockholders of the company met annually. As president of Auto Clean, appellee had overall management responsibilities for the corporation, for which he received a salary, and from which was withheld social security, state and federal taxes. The contract with Easterday was signed by Lee in his capacity as president.

Upon being notified of the Popores litigation, Ohio Casualty provided counsel for both Auto Clean and Lee and pleas and a motion to dismiss were filed on their behalf. The motion to dismiss alleged that Lee, the majority stockholder of Auto Clean, was Popores' employer.[4] The Motion was granted as to Auto Clean, but, because there was a possibility that Lee was acting as a co-employee when he installed the pressurized tank, it was denied as to him. As a result, counsel supplied by Ohio Casualty withdrew from the case, advising Lee that:

> The reason I cannot protect you under policy AG832639 is that the court has determined in this lawsuit you may be sued as a co-employee.

Lee then retained other counsel, who brought this declaratory judgment action against Ohio Casualty. Counsel also filed a motion for summary judgment in the third-party action.[5]

At all times relevant to these proceedings, Auto Clean was insured by Ohio Casualty under a garage liability policy, under which the "insured" was to be paid such sums as the "insured" was legally obligated to pay as a result of

---

4. The theory of the motion was the "exclusivity protection" of Md. Code.Ann. Art. 101, § 15.

5. Counsel advised Judge McAuliffe that Judge Cave granted the motion in February, 1984. He stated, however, that:

> "... Judge Cave stated on the record and make [sic] it quite explicit that the parties could continue to do discovery against Mr. Lee, and if they could find some evidence that he acted not as the alter ego of the corporation, but as a mere co-employee, that he would re-entertain a motion for reconsideration of his ruling on the motion for summary judgment ..."

Thus, Lee's status at the time when the pressure tank was installed has not been finally resolved in the underlying third-party action.

bodily injury or property damage to which the policy applied. With respect to who is an "insured", the policy provided, in pertinent part:

IV. PERSONS INSURED

Each of the following is an insured under this insurance to the extent set forth below:

(a) Under the garage, bodily injury and property damage liability coverages:

(1) The named insured;

(2) With respect to the *garage operations* other than *automobile hazard:* (a) any employee, director or stockholder of the *named insured* while acting within the scope of his duties as such,

None of the following is an insured:

(i) any person while engaged in the business of his employer with respect to *bodily injury* to any fellow employee of such person injured in the course of his employment; ... (emphasis in the original)

At trial, Ohio Casualty stipulated to all of the plaintiff's case except Lee's testimony.[6] Lee then testified that he made the decision to purchase and install the pressurized tank, the largest single purchase made by the company, without consultation with either the board of directors or the other stockholders; whenever he disagreed with the decision of the board of directors he could vote his stock at

---

**6.** The stipulation was to the allegations in "A Statement of Material Facts Not In Dispute", which constituted the evidence that would have been presented by Lee. Ohio Casualty stipulated that if witnesses were called, the facts set out in that pleading would be the testimony they would give. It did not stipulate as to the truth or the effect of the testimony.

In addition to the facts set out in this opinion, the stipulation included the facts that Popores filed and received Workmen's Compensation and that Lee, in 1979, employed 14 persons and was not continuously on the premises; he checked in on a frequent basis and remained on the premises at such times for between one-half hour to two hours.

the next stockholders' meeting and overrule that decision; on one occasion there was a conflict on the board with regard to his recommendation that the number of directors be reduced from six to three[7]; and on that occasion, he used his stock to remove the dissenting director and to implement the proposed reduction.[8] On cross-examination, Lee acknowledged that he was elected by the directors and that his salary was approved by the directors.

At the close of the evidence and after arguments of counsel, the trial judge concluded that the policy provisions at issue had "at least a potentiality of ambiguity" and ruled:

> In my view, the exclusion clause must be read as follows, "None of the following is an insured: (1) any person while engaged in the business of its employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment, but only when and while such person is acting solely as an employee and not as an officer, director or stockholder performing a non delegable duty of the business.

> "Under this interpretation, the defendant, Ohio Casualty Company, is required to furnish coverage to the plaintiff, Bobby T. Lee, who the testimony discloses was acting as president of the company and also performing a non-delegable duty of the business in entering into a contract on behalf of the corporation."

Ohio Casualty concedes that the third-party action alleges claims which would fall within Auto Clean's policy. It only disputes that Lee is an "insured" with respect to that policy. Recognizing that there are two conditions precedent to its duty to defend under the policy, the first relating to the claim with respect to which coverage is sought and the second, to the status of the person against whom a claim is

---

7. The minutes of the Board of Directors Meeting of May 12, 1980 reflect that Lee's recommendation failed by a vote of 2, in favor, 2, against and 1 abstention. One of the directors was not present.

8. The dissenting director was not removed, although his wife, the abstaining vote, was.

brought, i.e., whether that person is an insured under the contract: It contends that Lee qualifies only under the first. Thus, as Ohio Casualty views the issue, the only appropriate inquiry is whether Lee is an employee of Auto Clean.

Ohio Casualty argues that, as president of Auto Clean, Lee meets the five common law criteria for determining the existence of an employer-employee relationship, citing *Mackall v. Zayre Corp.*, 293 Md. 221, 230, 443 A.2d 98, 103 (1982), and falls within the definition of "employee" under the Workmen's Compensation Act, Md.Code Ann., Art. 101 (1979 replacement volume), citing *Riviera Beach. Vol. F. Co., Inc. v. Fidelity & Cas. Co. of N.Y.*, 388 F.Supp. 1114 (D.Md.1975), and cases arising under Louisiana law.[9] Relying also upon the rationale for the co-employee exclusion, as set out in *Bevans v. Liberty Mutual Insurance Company*, 356 F.2d 577 (4th Cir.1966), Ohio Casualty reasons that Lee, an employee under the policy, is not an insured and, therefore, properly was denied representation.

Ohio Casualty next argues that the "Persons Insured" section, and specifically "the cross-employee exception" clause is not ambiguous. Maintaining that the language in an insurance contract should be given its customary and common meaning, and be interpreted from the standpoint of reasonably prudent non-lawyers and, since the "cross-employee exception" clause contains no technical or overly sophisticated language, it contends that the plain language of that clause is unambiguous. Ohio Casualty thus asserts:

> "As Lee's decision to install the pressurized tank was made in his capacity as president and was within the scope of Auto Clean's business, and since Popores was an employee of Auto Clean injured as a result of the alleged negligence of Lee's decision, the situation is clearly one within the ambit of the exclusion."

---

**9.** *Mauterer v. Assoc. Indem. Corporation,* 332 So.2d 570, 573 (La.App. 4th Cir.1976), *Heiser v. Gibson,* 386 F.Supp. 901 (E.D.La.1974), *Manuel v. Liberty Mutual Insurance Co.,* 256 La. 480, 236 So.2d 807 (1970).

To say that Lee takes issue with these arguments is to understate the obvious. As to the first, relying primarily on *Brohawn v. Trans America Insurance Company*, 276 Md. 396, 347 A.2d 842 (1975) and *St. Paul Fire and Marine Insurance Company v. Pryseski*, 292 Md. 187, 438 A.2d 282 (1981), he argues that Ohio Casualty misinterprets and misconceives the real issue: Do the allegations in the third-party action "potentially" bring the claims within the policy's coverage? But Lee also denies that he acted only as an employee of Auto Clean when he authorized the installation of the tank. He reasons that his unique position with Auto Clean renders him at worst an employee performing the non-delegable duties of the corporation, and at best, its alter-ego, not a "mere" employee.[10] Finally Lee relies upon his expectations regarding the kind of coverage he thought he purchased when this policy was obtained. Thus, he argues that Ohio Casualty's failure to provide coverage violated the intent and purpose of the insurance contract.

Lee next argues that the factual circumstances render the policy ambiguous. The ambiguity is that the contract does not resolve the question of coverage when a defendant in a tort suit is operating in more than one covered capacity, only one of which is excluded by the policy.

■ Because we find, for reasons set forth below, that Ohio Casualty had the duty to defend Lee in the third-party actions, we will affirm the judgment of the trial court. We

---

**10.** In *Athas v. Hill,* 54 Md.App. 293, 301, 458 A.2d 859 (1983), we suggested that "... if the defendant so dominates the corporation, perhaps as a stockholder, president and manager, then he can honestly be said to be the alter ego of the corporation, and this in itself may suffice to bar any action against him." The Court of Appeals affirmed, 300 Md. 133, 476 A.2d 710 (1984), on the analysis that actions by an employee, to whom action against the corporation is foreclosed by Md.Code Ann. Art. 101, § 58, are barred against a co-employee who was performing the non-delegable duties of the corporation at the time the cause of action arose.

See also *Continental Cas. Co. v. Mirabile,* 52 Md.App. 387, 449 A.2d 1176 (1982) and *Schatz v. York Steak House Systems,* 51 Md.App. 494, 444 A.2d 1045 (1982).

will not address the issue whether the contract is ambiguous since our answer to the first question is fully dispositive of the appeal.[11]

█ We agree that "[t]he duty to defend is a contractually assumed obligation ..." which requires the examination of the precise language of the contract in question in order to determine the full scope of the obligations undertaken. *Riviera Beach Vol. F. Co. v. Fidelity & Cas. Co. of N.Y.*, *supra.* There are two conditions precedent to Ohio Casualty's duty to defend this third-party action: (1) the claim must fall within the coverage of the policy and, (2) the person against whom the claim is asserted must be an "insured". In this case, there is no dispute that the third-party actions allege claims within the coverage of the policy. Therefore, we agree that the essential dispute is whether Lee is an "insured". We do not agree, however, that the extent of our inquiry is limited to a determination of whether Lee, during the applicable period, was an employee of Auto Clean.[12]

We begin our analysis with *Brohawn v. Trans America Insurance Co., supra.* There, the insured, having entered a guilty plea to the charge of assault, was sued civilly for both assault and negligence. She sought coverage under her homeowners' insurance policy, which excluded intentional torts from actions to which a defense would be supplied. While the underlying tort action was pending, the insurance carrier refused coverage and sought a declaratory judgment as to the correctness of its position. The Court of Appeals held that the trial court did not abuse its discretion

---

11. The usual rule, as stated in *St. Paul Fire & Mar. Ins. v. Pryseski*, *supra*, is in a declaratory judgment action, any ambiguity in the coverage language of an insurance policy should be resolved independently of the resolution of any issue raised by the allegations of an underlying tort suit. The rule does not apply, however, when, as here, they are interdependent and must be resolved during the trial of the tort suit.

12. For purposes of our analysis, we assume *arguendo* that Lee was an employee of Auto Clean.

when it dismissed the Bill for Declaratory Judgment, not-ing:

> If the issue upon which coverage is denied were not the ultimate issue to be determined in a pending suit by a third party, a declaratory judgment would be appropriate. But where, as here, the question to be resolved in the declaratory judgment action will be decided in pending actions, it is inappropriate to grant a declaratory judgment. (citations omitted)

Id., 276 Md. at 406, 347 A.2d 842.

The court also set forth the obligation of an insurer with respect to the defense of its insured, that is, to defend an insured if the tort action alleges a claim covered by the policy. The Court said:

> Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy. *USF & G v. Nat. Pav. Co.,* 228 Md. 40, 54, 178 A.2d 872 (1962).[13]

Id. at 408, 347 A.2d 842.

*Brohawn* was explicated by *St. Paul Fire and Marine Insurance v. Pryseski, supra.* In *St. Paul,* Pryseski, field manager and insurance agent for Sun Life Insurance Company, and Sun Life were sued for intentional infliction of emotional distress, assault and battery and loss of consortium. The suit, brought by policyholders, alleged that Pryseski was acting in the course of his employment as agent for Sun Life and that Sun Life had ratified Pryseski's

---

**13.** In *USF & G v. National Paving Company, supra,* language appearing in 50 A.L.R.2d 458, 504, was quoted with approval:

> "Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, *potentially,* a case under the complaint, within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor." (emphasis in the original)

acts. While agreeing to supply a defense for Sun Life, the insurer denied coverage for Pryseski because the acts alleged were violations of a penal statute or ordinance, and outside the scope of employment, consequently, St. Paul said the alleged acts were not covered under the policy. Pryseski filed a declaratory judgment action for a determination of his entitlement to a defense. The Court of Appeals stated that questions ordinarily presented when an insurer's duty to provide a defense for its insured is at issue are:

1. What is the coverage and what are the defenses under the terms and requirements of the insurance policy?

2. Do the allegations in the tort action potentially bring the tort claim within the policy's coverage?

The first question involves the interpretation of the language and the requirements of the policy and the second, an analysis of the allegations of the tort suit. They may involve separate and distinct matters or be intertwined.[14] Although the "potentiality" test is generally applicable only to the second question, "[i]t may, however, be applicable to an issue raised under the first question ... if that issue must also be resolved in the underlying tort suit." Id., 292 Md. at 194, 438 A.2d 282.

■ Applying the teachings of *Brohawn* and *St. Paul*, it is clear that they control the resolution of the case *sub judice*. Here, the underlying tort action including the third-party claims, has yet to be tried. One of the issues before that court is the capacity in which Lee acted when he authorized the installation of the pressurized tank. From the record it is clear that Lee occupied three positions with respect to Auto Clean. He was its president, a director and a stockholder. In each of these capacities, so long as he is

---

14. In St. Paul, in addition to the question concerning the allegations of the tort suit, there was a question presented as to the meaning of "occurrence." The two questions were found to be distinct, requiring that each be resolved.

"acting within the scope of his duties as such", he is an insured. In one of them, the presidency, he is an employee, thus, he is excluded from coverage "while engaged in the business of his employer with respect to *bodily injury* to any fellow employee of such person injured in the course of his employment." The judge trying the tort action has granted, subject to further discovery and reconsideration, Lee's motion for summary judgment, presumably on the authority of *Athas v. Hill*, 54 Md.App. 293, 458 A.2d 859 (1983).[15] That ruling is instructive since the trial judge has found it undisputed that Lee acted not as an employee, but as employer, thus sharing Auto Clean's immunity from suit. If, however, this ruling were later reconsidered and the tort action tried with Lee as a third-party defendant, additional evidence relevant to the capacity in which Lee acted when purchasing and installing the pressurized tank would be admissible. In that event, the trier of fact would have to determine if Lee were acting as a director, as a stockholder, or as an employee performing the non-delegable duty of his employer,[16] or if he was acting solely in the capacity of

---

15. See note 2.

16. In *Athas v. Hill*, the Court of Appeals was presented with the question whether Art. 101 § 58 authorizes a cause of action for damages by a co-employee against supervisory co-employees, who were also corporate officers. While recognizing that "[l]ogically, the term 'co-employees' includes supervisors and corporate officers as well as fellow employees with similar rank," the court immunized from such suits those supervisory employees and corporate officers who performed non-delegable duties for their employer. It stated the rule as follows:

"In undertaking such managerial and personnel functions, the officers assumed an obligation to the employer only. Corporations perform their acts only through agents. The acts of the corporate officers and agents here cannot be separated from that of the corporation."

An employee performing non-delegable duties is not specifically covered by the policy. The rationale underlying *Athas v. Hill*, however, is equally compelling in this context. It seems logical, therefore, that evidence concerning Lee's duties would be admissible and utilized by the trier of fact to determine the capacity in which he acted. This is particularly true when, as here, the injured employee has

president of Auto Clean, therefore, as an employee. If it were to find the former, Lee would be covered under the policy of insurance. Conversely, if it were to find the latter, Lee would not be covered. In short, there is a "potentiality" of coverage. Ohio Casualty should have provided a defense.

■ Ohio Casualty asserts that because one acts in multiple capacities should not control the decision of this case, since a person can be both an officer and a director and still be considered an employee. We agree. It further argues that the only capacity in which Lee could have made the decision to install the pressurized tank was as president/employee of Auto Clean. This argument misconstrues the issue. We reiterate, the relevant inquiry is whether there is a "potentiality" of coverage, not the determination of coverage as a matter of fact. We also adopt the response of the Court of Appeals to a similar contention:

> "While Trans America may believe that the evidence of the guilty plea would establish injuries sustained by Mrs. Schaffer or Mrs. Friend were the result of intentional acts by Mrs. Brohawn, this belief will not relieve Trans America of its duty to defend its insured in suits which allege an unintentional tort covered by the policy. The obligation is contractual and exists because of the agreement made by Trans America with Mrs. Brohawn." *Brohawn, supra,* 276 Md. at 408, 347 A.2d 842.

■ In the case *sub judice,* Ohio Casualty's belief as to the capacity [17] in which Lee acted will not relieve it of its duty to defend Lee. Nor can Ohio Casualty gain solace from the fact that there does not appear to be any basis for a claim based on a capacity other than president. It undertook to defend its insured against suits alleging bodily

---

received Workmen's Compensation benefits and the third-party claims depend upon the viability of his claim against Lee.

**17.** The existence of an employer-employee relationship is a question of fact. *Mackall v. Zayre,* supra.

injury and seeking damages even if the allegations of the suit are groundless, false or fraudulent. "The plain meaning of this covenant is that the insurer will defend any suits stating a claim within the policy even though 'the claim asserted against the insured cannot possibly succeed because either in law or in fact there is no basis for a plaintiff's judgment' (citation omitted). *Brohawn, supra,* at 408, 409, 347 A.2d 842.

*Riviera Beach* and *Bevans* relied upon by the appellant are inapposite. In both cases, the affected employee was simply a "mere employee" with no other capacity in the corporation. To the extent that Louisiana cases arrive at a conclusion different from ours, they are not binding. The Court of Appeals has provided us with the test to be applied. It is to the Court of Appeals that we look, not to Louisiana.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.